**In the Matter of David JORDAN, A Child Alleged To Be A Child In Need of Services.**

**Vilinda HENDRY, Appellant (Respondent),**

v.

**MARION COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee (Petitioner).**

**No. 49A02–9212–JV–618.**

Court of Appeals of Indiana, Second District.

June 24, 1993.

◎⇒132

Christopher B. Haile, Kenneth J. Falk, Legal Services Organization of Indiana, Indianapolis, for appellant.

Mary Jane Norman, Rebecca Bowman, Marion County Dept. of Public Welfare, Indianapolis, for appellee.

FRIEDLANDER, Judge.

## CASE SUMMARY

Appellant-respondent Vilinda Hendry (Hendry) appeals from the trial court's entry of summary judgment in favor of The Marion County Department of Public Welfare (DPW), in which the court determined it was proper to hold a post-detention hearing regarding Hendry's son, David Jordan (David), nearly 156 hours after a policeman took David into protective custody and placed him in a guardian home.

We affirm.

## FACTS

The facts most favorable to Hendry, the nonmoving party, reveal that David was born on April 26, 1988. David has serious medical problems including spina bifida and meningomyelocele, and has required regular follow-up care at Riley Hospital (Riley) in Indianapolis.

David was admitted to Riley on October 27, 1991, after Hendry reported that David

suffered episodes of sleep apnea. Several days later, the DPW received a report which alleged that Hendry suffered from Munchausen Syndrome by proxy, which is a psychiatric condition causing a person to fabricate the illness of another, usually a dependent child, in order to gain attention and approval from the medical community for care provided to the child.

On November 8, 1991 (Friday), DPW caseworker Tom Feeney (Feeney) indicated that Hendry could take David home from the hospital. Hendry arrived at Riley at approximately 4:30 p.m. on November 8, and she was advised by a hospital social worker and two Indiana University Campus policemen that they were taking David into protective custody. On Monday, November 11, the court and the DPW offices were closed because it was Veteran's day, a State holiday.

Following David's removal from Riley, he was transported to a Marion County Guardian's home, and Hendry filed on November 13, 1991, a complaint for declaratory and injunctive relief in the Marion County Court, juvenile division, for David's release. The next day (November 14), the DPW filed a petition for temporary custody with the juvenile court, and the court scheduled a hearing for November 15, 1991. On that day, the trial court conducted a post-detention hearing in response to the DPW's petition alleging that David was a Child In Need of Services (CHINS).

David was returned, after the hearing, to Hendry's custody under the DPW's supervision. On December 13, 1991, the State moved to dismiss the underlying CHINS petition, and that motion was granted on December 19. Hendry filed a motion for summary judgment on January 15, 1992, and the DPW filed its motion for summary judgment on February 6, 1992. Hearing was conducted on the motion for summary judgment on April 8, and at the conclusion thereof, the juvenile court entered the following facts and conclusions of law:

## FINDINGS OF FACT

.    .    .    .    .

3. On October 27, 1991, David Jordan was admitted to Riley Hospital after the mother reported episodes of sleep apnea.

4. On November 1, 1991, a report was received by the Marion County Department of Public welfare alleging that Vilinda Hendry suffered from Munchausen Syndrome by proxy, a psychiatric condition causing a person to fabricate illness of another, usually a dependent child, in order to obtain attention and approval from the medical community for care provided to the other, usually a dependent child.

5. Marion County Department of Public Welfare Caseworker, Tom Feeney investigated the report and learned that the child had been on an apnea monitor since January 1989. Linda Hendry had reported several instances of apnea episodes but none of them could be confirmed, and that a recent hospital record of the apnea monitor had indicated it had been tampered with. When a second test was run without Vilinda Hendry being present, the recordings were normal.

6. The Marion County Department of Public Welfare and Riley Hospital communicated and Riley staff explained their concerns that the mother had caused unnecessary hospitalizations and testing for the child. *They also believed she had fabricated episodes of apnea and had tampered with the apnea monitor. The staff expressed fear that mother would harm the child in order to get attention.* Dr. Linda LaClave, psychiatrist, had concluded that the mother had Munchausen Syndrome (Factional Disorder) by proxy and that the mother and her oldest son both had a history of sexual and physical abuse. Johnny, the oldest son, had also expressed homicidal feelings toward David and is in treatment counseling at Riley. Dr. LaClave expressed concern that the mother planned for the oldest child to administer cardiopulmonary resuscitation on David if needed. Finally, Riley staff cited a history of failed clinic appointments followed by admissions to the emergency room as indicative of the disorder.

.    .    .    .    .

8. David Jordan was taken into custody on Friday, November 8, 1991, after normal office hours by the Indiana University Campus Police and Monday, November 11, 1991, was Veteran's Day, a legal holiday, for which the Government Offices, including, the Marion Superior Court, Juvenile Division, [were] closed.

9. The Marion County Department of Public Welfare on November 13, 1991, prepared its Preliminary Inquiry and Affidavit and a Request For Filing of Petition and for Temporary Custody and/or Supervision, which documents were filed with the Marion Superior Court, Juvenile Division on November 14, 1991. That as a result of such filing, the Court found that a reason for placement and protective custody, based upon such information, existed, and issued an order dated, November 13, 1991, which placed the child in the custody of the Welfare Department and set the matter for hearing on November 15, 1991, at 8:30 a.m.

10. That such documents are routinely presented to the Court and are on occasion, signed by the Court after the Clerk of the Court is closed for the day and, therefore, the document may be signed on one day and file-marked by the Clerk on the following day.

11. On November 14, 1991, counsel for Vilinda Hendry made a formal written demand upon the Marion County Department of Public Welfare for the return of David Jordan from custody.

12. On November 13, 1991, Vilinda Hendry filed her Complaint for Declaratory and Injunctive Relief.

13. A hearing was held before the Marion Superior Court, Juvenile Division, on November 15, 1991, before Magistrate J. Blaschke who ordered the child returned to the mother under the conditions that the Visiting Nurse Service and a Public Health Nurse continue to supervise and that the mother complete a psy-·chological evaluation, the results of which would be disclosed only to her attorney.

14. David Jordan was removed from the care of his mother on November 8, 1991, after 4:30 p.m. and a hearing was held before the Marion Superior Court, Juvenile Division, on November 15, 1991, at approximately 8:30 a.m.

15. David Jordan was removed from his mother and held for 156 hours, or six and one-half (6½) days before Judicial proceedings were initiated but the intervening week-end and holiday delayed the request for permission and filing of the Petition in this cause.

16. The Petition having been approved by the Court on November 13, 1991, *and a hearing held on November 15, 1991, at 8:30 a.m. was as soon as the Court could set such hearing.*

17. Indiana code 31–6–4–6(e) requires that a detention hearing must be held within seventy-two (72) hours excluding Saturdays, Sundays, and legal holidays after he is taken into custody; otherwise, he shall be released.

## CONCLUSIONS OF LAW

2. The issue of the Constitutionality of the Indiana Detention Law is capable of repetition yet evading review and, therefore, is not moot, in spite of the fact that David Jordan has been returned to Vilinda Hendry at the time of this order.

3. Indiana Code 31–6–4–6(e) provides for a detention hearing within seventy-two (72) [hours] excluding Saturdays, Sundays and legal holidays and that such law is not unconstitutional.

4. The taking of a child into custody for the child's protection is not tantmount [sic] to criminal detention requiring a hearing within forty-eight (48) hours as determined in *County Of Riverside v. McLaughlin* (1991) [——] U.S. [——], 111 Sct. [sic] 1661 [114 L.Ed.2d 49] and that this proceeding is not a criminal action.

5. The due process rights of David Jordan and Vilinda Hendry were not violated either by statute or the procedure followed in implementing the provisions of the statute, specifically, because I.C. 31–6–4–4(e) requires that if a hearing is not held within seventy-two (72) hours,

then the child shall be released to the parent.

6. I.C. 31–6–4–6(e) provides an adequate and appropriate balance between the need and right on one hand of the child to be protected from harm or injury and for the State to conduct an investigation to determine the appropriateness of the filing of the Petition, and on the other hand the mother's right to have the care and custody of the child remain in her.

7. That the balance of the child's right to be protected, the parent's right to custody of a child, and the necessity of having adequate and appropriate information to make a determination for a Petition to be filed and a child to remain in custody, is met by the requirements of I.C. 31–6–4–6.

.    .    .    .    .

### ORDER

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED, that the Motion For Summary Judgment filed by the Marion County Department Of Public Welfare on February 6, 1992, is hereby granted, the Motion For Summary Judgment filed by Vilinda Hendry on January 15, 1992, is hereby denied, and judgment is hereby entered in favor of the Marion County Department of Public Welfare and against Vilinda Hendry on her complaint For Declaratory and Injunctive Relief filed November 13, 1991.

*s/ James W. Payne, Judge*
*Record* at 14–18 (emphasis supplied).

### ISSUE

Does due process require that a detention hearing be held within forty-eight hours including weekends and holidays after a child is removed from his parent's custody pursuant to a CHINS petition filed by the DPW?

### DECISION

PARTIES' CONTENTIONS—Hendry argues that the trial court erred in granting the DPW's motion for summary judgment because the constitutional requirement of Due Process mandates that a hearing be held within forty-eight hours after a child is removed from a parent's custody. The DPW responds that IC 31–6–4–6(e) (the detention statute), which requires a detention hearing to be held within seventy-two hours, excluding Saturdays, Sundays, and legal holidays after the child is taken into custody, is constitutional.

CONCLUSION—The trial court properly granted the DPW's motion for summary judgment, and the detention statute is constitutional.

■ We must initially address the DPW's claim that this case is moot, inasmuch as the CHINS petition was dismissed which demonstrates that there is no longer any live case or controversy and neither David nor Hendry has a "legally cognizable interest in the outcome." *See In re Tina T.* (1991), Ind., 579 N.E.2d 48 at 52. While moot cases are usually dismissed, Indiana courts have recognized that a case may be decided on its merits under an exception to the general rule when the matter involves a question of great public interest. *See Matter of Lawrance* (1991), Ind., 579 N.E.2d 32; *Indiana Educ. Employment Relations Bd. v. Mill Creek Classroom Teachers Ass'n* (1983), Ind., 456 N.E.2d 709. Cases found to fall within the public interest exception typically contain issues likely to recur. *Lawrance, supra; Mill Creek, supra.*

As this court observed in *Wardship of Nahrwold v. Department of Pub. Welfare* (1981), Ind.App., 427 N.E.2d 474:

"[A] parent has a fundamental right to raise her child without undue interference by the state, and the parent-child relationship includes a parent's right to have unrestrained custody of her child. Of course, these rights are balanced against the parental duty to provide for the physical and mental well-being of one's children. When the parent fails to fulfill this duty the state has the authority:

'... pursuant to its *parens patriae* power, to intervene when parental neglect, abuse or abandonment has been

established. In such a case the state most certainly has a compelling interest in protecting the welfare of the child.' *In the Matter of Joseph* (1981), Ind.App., 416 N.E.2d 857, 860."

*Id.* at 477.

■ The matter before us falls within this exception to the general rule. Regardless of the DPW's decision to dismiss the CHINS petition, the public interest at stake is demonstrated in part by the possibility that many children will face detention hearings which may comply with, or exceed, the time limits prescribed by the seventy-two hour detention statute. Moreover, David is still a minor, and the DPW could conceivably file a subsequent CHINS petition which would result in a similar alleged constitutional violation. We therefore conclude that the issue of the constitutionality of the detention statute is not moot, and we will address the issue even though the CHINS petition has been dismissed. *See Lawrance, supra.*

IC 31–6–4–6(e) provides in relevant part that:

"If the child is not released, *a detention hearing must be held within seventy-two (72) hours (excluding Saturdays, Sundays, and legal holidays) after he is taken into custody; otherwise he shall be released.* Notice of the time, place, and purpose of the detention hearing shall be given to the child. Notice shall also be given to his parent, guardian, or custodian if he can be located."

(Emphasis supplied).

■ The essence of Hendry's argument is that the detention statute does not afford a child and his parent a prompt postdeprivation proceeding. The issue is a novel one in Indiana, as we have never been called upon to construe the constitutionality of the detention statute's seventy-two hour time limit (excluding weekends and legal holidays).

The DPW points to statutes and cases of other jurisdictions having similar time-limit provisions which satisfy due process requirements.[1] Despite the diversity of time limits, the statutes have been determined to provide adequate postdeprivation due process. Although Indiana's detention statute is not as stringent or as broad as those of other jurisdictions, it certainly falls within the range of the statutes held to provide adequate due process.

David's removal from Hendry's custody and care on a Friday afternoon prior to a holiday weekend is unfortunate. This, however, does not render the detention statute violative of one's due process rights. Hendry's reliance upon *County of Riverside v. McLaughlin* (1991), — U.S. ——, 111 S.Ct. 1661, 114 L.Ed.2d 49, which she cites for the proposition that a probable cause detention hearing in a criminal proceeding is constitutionally required within forty-eight hours (*including* weekends and holidays), is misplaced.

*Riverside* involved a warrantless arrest in a criminal context, and Hendry seeks to analogize the criminal due process requirements to the CHINS considerations. The concerns in a CHINS situation and a criminal proceeding are vastly different. While a person's liberty interest is at stake in a criminal detention, the taking of a child into custody pursuant to a CHINS petition involves the protection of the child. The statute provides for the child's needs to be met during the period of custody and he or she is not exposed to the risk of possible parental abuse or neglect. Any further legal action that may be required is pursued in the nature of a *civil* matter.

Contrary to Hendry's contention, *Riverside* did not *absolutely* require that a probable cause hearing be conducted within a forty-eight hour period. The court recognized that:

**1.** *See e.g. In re R.G.* (1991), 238 Neb. 405, 470 N.W.2d 780 (fourteen day lapse of time between *ex parte* order authorizing continued out-of-home placement and the hearing as to that issue, was constitutional); Ill.Ann.Stat. § 405/209 (hearing must be held within forty-eight hours excluding Saturdays, Sundays, and

court designated holidays); Ky.Rev.Stat.Ann. § 620.080 (hearing must be held within 72 hours excluding weekends and holidays); N.D.Cent.Code § 27–20–17 (hearing must be held within ninety-six hours); Pa.Cons.Stat.Ann. § 620.080 (hearing must be held within seventy-two hours).

"[T]he fourth Amendment requires every state to provide prompt determinations of probable cause, *but ... the Constitution does not impose on the states a rigid procedural framework.* Rather states may choose to comply in different ways."

*Id.* at ——, 111 S.Ct. at 1668 (emphasis supplied). As in criminal cases, the states should be permitted to apply their CHINS requirements with some flexibility. Some delays are reasonable and inevitable, such as the gathering of paperwork, the review of records, and the drafting of documents. *See Riverside, supra.*

Our detention statute is not unreasonable, and IC 31–6–4–4(c) contains safeguards to prevent an erroneous *ex parte* removal of a child:

"A child may be taken into custody by .a law enforcement officer, probation officer, or caseworker acting with probable cause to believe the child is a child in need of services if:

(1) it appears that the child's physical or mental condition will be seriously impaired or seriously endangered if the child is not immediately taken into custody;

(2) there is no reasonable opportunity to obtain an order of the court; and

(3) consideration for the safety of the child precludes the immediate use of family services to prevent removal of the child."

The above statute and the detention statute provide an appropriate and adequate balance between the need and right on the part of a child to be protected from harm, and the parent's right to have the custody and care of the child remain in him or her. The time limits of the detention statute also provide the State with the opportunity to conduct an investigation and to determine the appropriateness of filing a CHINS petition. It also meets the requirements of due process.

The seventy-two hour time limit (excluding weekends and holidays) imposed by the detention statute does not constitute an unreasonable delay in conducting a hearing following the State's notification to a par-

ent that emergency action has been taken regarding the child. Not a shred of evidence was presented that David's hearing was delayed due to "ill will" on the part of the State, or that a delay occurred merely "for delay's sake." Indiana's detention statute provides for adequate post-deprivation proceedings, and there is no constitutional violation stemming from the seventy-two hour time period. The trial court therefore properly granted the DPW's motion for summary judgment.

Judgment affirmed.

SULLIVAN and HOFFMAN, JJ., concur.